652 S.E.2d 397

**In the Matter of Bobby J. LONG, Respondent.**

No. 26385.

Supreme Court of South Carolina.

Submitted Sept. 10, 2007.

Filed Oct. 22, 2007.

Lesley M. Coggiola, Disciplinary Counsel, Henry B. Richardson, Jr., Senior Counsel, Barbara M. Seymour, Assistant Deputy Disciplinary Counsel, and Michael J. Virzi, Assistant Disciplinary Counsel, all of Columbia, for the Office of Disciplinary Counsel.

Bobby J. Long, of Prosperity, respondent, pro se.

PER CURIAM.

In this attorney disciplinary matter, respondent and the Office of Disciplinary Counsel (ODC) have entered into an Agreement for Discipline by Consent (Agreement) and an Addendum to Agreement (Addendum) pursuant to Rule 21, RLDE, Rule 413, SCACR. In the Agreement and Addendum respondent admits misconduct and consents to a public reprimand or a definite suspension not to exceed sixty (60) days. *See* Rule 7(b), RLDE, Rule 413, SCACR. We accept the Agreement and Addendum and definitely suspend respondent from the practice of law in this state for a thirty (30) day period.

### *FACTS*

The facts, as set forth in the Agreement, are as follows. During 2003, respondent was an owner of Palmetto Law

Group, LLC, doing business as Jacobsen & Long and, later, as Jacobsen Pincus & Long (the Firm). Although Karl Jacobsen, Monet Pincus, and respondent were all signatories on the Firm's trust account, respondent was the primary person responsible for overseeing the Firm's trust account and maintaining the Firm's financial records. During 2003, the Firm failed to maintain journals, ledgers, checkbook registers, and reconciliation reports as required by Rule 417, SCACR, and failed to maintain adequate bookkeeping or accounting procedures to accurately account for client funds.

During 2003, the Firm's trust account was out of balance. In July 2003, respondent noticed an accounting discrepancy indicating the Firm's trust account was out of balance. He hired an accountant to audit the trust account and discovered the account was short approximately $15,000. Upon learning this, respondent brought the trust account back into balance over a period of several months by leaving earned fees in the trust account until the balance was restored.

In September 2003, respondent suffered personal problems which, at times, affected his ability to competently and diligently represent clients. During this time, respondent occasionally ignored client files that needed attention. On one occasion, respondent failed to timely correct inaccurate information on a document filed with the Bankruptcy Court.

During 2003, Jacobsen undertook representation of more bankruptcy clients than he could competently and diligently handle and was repeatedly sanctioned by the Columbia Division of the Bankruptcy Court. These sanctions included reprimands and orders to disgorge fees. In November 2003, Jacobsen was suspended by consent from practicing before the Bankruptcy Court. Respondent was aware of these problems and failed to take action to correct them.

Pincus' October 2003 departure from the Firm, Jacobsen's suspension from the Bankruptcy Court, and respondent's December 2003 relocation to Greenville left the Firm with no attorney admitted before the Bankruptcy Court in the Columbia area although the Firm had approximately 2000 pending bankruptcy cases. Problems in the Firm's Columbia office were not replicated in the Greenville office.

On or about March 15, 2004, in anticipation of Jacobsen's interim suspension and the appointment of an attorney to protect clients' interests pursuant to Rule 31, RLDE, Rule 413, SCACR, respondent entered into an agreement to transfer approximately 144 of the Firm's files to a Greenville bankruptcy attorney.[1] Respondent then submitted an Interim Consent Order Substituting Counsel to United States Bankruptcy Judge John E. Waites. Within days, the other attorney withdrew his consent to transfer and did not acquire any client files. Respondent now recognizes that this effort, while intended to benefit clients, would have violated the Rules of Professional Conduct if consummated. *See* Rule 1.6 (confidentiality of client information) and Rule 1.16(d) (lawyer shall give client reasonable notice of termination of representation) of Rule 407, SCACR.

On March 17, 2004, respondent permanently closed the Firm's Greenville office.[2] As of that date, the office door was locked and the answering machine for the Greenville office advised that the office was closed and someone would be contacting current clients to make arrangements. At that time, the Firm had approximately 400 cases pending before the Spartanburg Division of the Bankruptcy Court, including the 144 active cases respondent had attempted to transfer to another attorney. Respondent also had several court appearances scheduled for the week in which he closed the office.

On March 18, 2004, Jacobsen was placed on interim suspension and attorneys were appointed to protect his clients' interests (APCI). *See In the Matter of Jacobsen*, 357 S.C. 630, 595 S.E.2d 241 (2004). Respondent represents, and ODC does not dispute, that he believed he was not entitled to access his own files and that he was cooperating with the Court by leaving his files for the APCI. Respondent now recognizes that he should not have closed his office in response to speculative statements about an impending suspension, but should have continued to represent all of his clients and keep all office resources available to them until being specifically ordered to

---

1. Respondent had now moved to Atlanta, Georgia.

2. Respondent continued to represent his non-bankruptcy clients and has now concluded those matters.

do otherwise by the Court or its APCI. Once the APCI took possession of the files, respondent fully cooperated and resumed active representation on those files that the APCI determined should be returned to him. Respondent has since handled those matters without complaint and has fully cooperated with ODC in these matters.

The facts, as set forth in the Addendum, are as follows. On or about March 18, 2004, respondent issued an electronic check from a personal account in the amount of $2,724.00 payable to the Firm's trust account. The check was not negotiated at the time it was written. The original, non-negotiated check was later discovered by an APCI. The APCI attempted to deposit the check, but by that time, respondent's personal account had been closed and the check was no longer negotiable.

At the time the March 18, 2004 check was written, it had been respondent's practice to deposit checks received from clients into the Firm's operating account and then transfer the funds by check from the operating account into the trust account. When the Firm began experiencing difficulties, respondent felt it would be prudent to deposit the client checks into his personal account, rather than the Firm's operating account, and then transfer those funds to the Firm's trust account. Respondent's purpose in processing client funds through the operating account was to avoid depositing checks into the trust account that might be returned for insufficient funds.

The March 18, 2004 check at issue was written as part of this method of dealing with client checks. Respondent now recognizes that it was improper to deposit client funds into any account other than a trust account, regardless of his purpose.

Neither respondent nor ODC are able to identify to which client or clients the $2,724.00 belongs. Respondent has paid $2,724.00 to the Lawyers' Fund for Client Protection. These funds shall be applied toward any claims made against respondent, Jacobsen, or the Firm.

## LAW

Respondent admits that by his misconduct he has violated the following provisions of the Rules of Professional Conduct,

Rule 407, SCACR: Rule 1.1 (lawyer shall provide competent representation to client); Rule 1.3 (lawyer shall lawyer shall act with reasonable diligence and promptness in representing a client); Rule 1.15 (lawyer shall hold client property separate from lawyer's own property); Rule 5.1(a) (partner in firm shall make reasonable efforts to ensure firm has in effect measures giving reasonable assurance that all lawyers in firm conform to Rules of Professional Conduct); Rule 5.1(c)(2) (lawyer shall be responsible for another lawyer's violation of Rules of Professional Conduct if lawyer is partner in firm in which other lawyer practices and knows of conduct at time when its consequences can be avoided or mitigated but fails to take reasonable remedial action); Rule 8.4(d) (lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation); and Rule 8.4(e) (lawyer shall not engage in conduct that is prejudicial to administration of justice). Respondent further admits his misconduct constitutes a violation of the financial recordkeeping provisions of Rule 417, SCACR. Finally, respondent admits his misconduct constitutes grounds for discipline pursuant to Rule 7, RLDE, of Rule 413, SCACR, specifically Rule 7(a)(1) (it shall be ground for discipline for lawyer to violate Rules of Professional Conduct or any other rules of this jurisdiction regarding professional conduct of lawyers) and Rule 7(a)(5) (it shall be ground for discipline for lawyer to engage in conduct tending to pollute the administration of justice or to bring the courts or the legal profession into disrepute or conduct demonstrating an unfitness to practice law).

## CONCLUSION

We accept the Agreement and Addendum and definitely suspend respondent from the practice of law for a thirty (30) day period. Within fifteen days of the date of this opinion, respondent shall file an affidavit with the Clerk of Court showing that he has complied with Rule 30, RLDE, Rule 413, SCACR.

**DEFINITE SUSPENSION.**

TOAL, C.J., MOORE, WALLER and BEATTY, JJ., concur. PLEICONES, J., not participating.